UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
ROBERT AHEARN, individually and on
behalf of all others similarly situated,

                           Case No.

        Plaintiff,

v.

                           **CLASS ACTION COMPLAINT**

JOHNSON HEALTH TECH TRADING, INC. and
JOHNSON HEALTH TECH RETAIL, INC.       **JURY TRIAL DEMANDED**

        Defendants.
---------------------------------------------------------------x

      Plaintiff, ROBERT AHEARN (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

      1.      This is a consumer class action brought against Johnson Health Tech Trading, Inc. and Johnson Health Tech Retail, Inc. (together, "Defendants") for their sale of dangerously defective BowFlex SelectTech adjustable dumbbells and for their implementation of a fundamentally inadequate recall that fails to compensate most affected consumers.

      2.      The recall concerns approximately 3.8 million BowFlex-branded dumbbells—specifically the Model 552 (adjustable from 5 to 52.5 lbs) and Model 1090 (adjustable from 10 to 90 lbs) (hereinafter the "Products")—which were sold throughout the United States from 2004 through 2025. These dumbbells contain a critical design defect: during normal use, the weight plates can dislodge from the handle, posing a serious risk of injury to consumers (hereinafter the "Defect").

1

3. As of June 2025, Defendants and their predecessor, Nautilus, Inc. ("Nautilus"), had received at least 349 reports of this malfunction, including 111 confirmed injuries ranging from broken toes and abrasions to concussions and contusions.

4. In response, Defendants initiated a recall in cooperation with the U.S. Consumer Product Safety Commission ("CPSC")[1].

5. However, the recall is grossly insufficient. It arbitrarily distinguishes between consumers based solely on when they purchased the product.

6. Those who bought the dumbbells after April 23, 2024—representing a tiny fraction of all affected users—are eligible for a full refund or a replacement set. But the overwhelming majority of consumers—those who purchased before April 23, 2024, during the two-decade period when Nautilus marketed the product—receive no such relief.

7. Instead, these pre-April 2024 purchasers, who make up approximately 96% of all affected customers, are offered only a prorated voucher and a one-year subscription to Defendants' JRNY fitness app.

8. The value of these vouchers has been reported by consumers to range from $20 to $95. Meanwhile, the cost of replacing the defective dumbbells ranges between $429 and $799. The offered vouchers cover only a small fraction of that replacement cost, leaving consumers to pay hundreds of dollars out of pocket to replace a product they never should have been sold.

9. This is not a fair or meaningful remedy. The defect renders the dumbbells unsafe and unusable. A product that risks flinging weight plates across a room is not one consumers can continue using—or resell, repair, or give away. Yet Defendants offer most affected customers only

---

[1] https://www.cpsc.gov/Recalls/2025/Johnson-Health-Tech-Trading-Recalls-BowFlex-Adjustable-Dumbbells-Due-to-Impact-Hazard-Including-3-7-Million-Sold-by-Nautilus-Inc

2

partial store credit toward the purchase of new equipment from the same brand, with no cash refund or repair option.

10. As such, the Recall is entirely insufficient and vastly inferior to the remedies available in a class action lawsuit.

11. This action seeks to hold Defendants accountable for their deceptive and inequitable conduct. Plaintiff and the proposed Class seek restitution, compensatory damages, and equitable relief, including the establishment of a court-supervised recall program that fully refunds all purchasers, regardless of when they bought the product, and ensures that the recall is conducted with transparency, fairness, and adequate consumer notice.

## **FACTUAL BACKGROUND**

12. From 2004 through 2025, approximately 3.8 million BowFlex-branded adjustable dumbbells were sold throughout the United States. These products include the SelectTech Model 552 (adjustable from 5 to 52.5 pounds) and the SelectTech Model 1090 (adjustable from 10 to 90 pounds) (collectively, the "Products").

13. The Products were marketed as space-saving strength-training equipment designed to replace multiple sets of traditional dumbbells. They were sold as single units or in pairs, through national retailers including Amazon, Best Buy, and DICK'S Sporting Goods, as well as directly through the BowFlex website. Retail prices ranged from approximately $200 to $800.

14. The Products contain a defect in their mechanical locking system. This defect causes the weight plates to detach or dislodge from the handle during use.

15. This defect creates a significant safety hazard. Detached weight plates can fall or fly off without warning, posing a risk of blunt force injuries to users and bystanders.

16. Defendants and their predecessor, Nautilus, Inc., received a combined 349 incident reports concerning this defect. At least 111 of those incidents resulted in injuries, including concussions, broken toes, abrasions, and contusions.

17. On June 5, 2025, the U.S. Consumer Product Safety Commission ("CPSC") announced a nationwide recall of the Products.

18. The recall does not apply equally to all purchasers. Only consumers who purchased the Products on or after April 23, 2024, are eligible for a full refund or replacement set.

19. Consumers who purchased the Products prior to April 23, 2024—approximately 96% of all purchasers—are excluded from a full refund or replacement. Instead, they are offered only a prorated voucher and a one-year subscription to Defendants' JRNY digital fitness app.

20. These vouchers are redeemable only on Defendants' website and cannot be exchanged for cash. Consumers have reported receiving voucher amounts as low as $20 and no higher than $95.

21. The cost of replacing the Products is substantially higher. A new set of Model 552 Products retails for approximately $429. A new set of Model 1090 Products retails for approximately $799.

22. The recall therefore requires most consumers to spend hundreds of dollars out of pocket to replace defective, unsafe equipment that is no longer fit for use.

23. On information and belief, Johnson Health Tech Trading, Inc. imports the Products into the United States. Johnson Health Tech Retail, Inc. handles distribution, retail sales, and recall administration.

24. Defendants publicly disclaimed legal responsibility for the Products sold before April 23, 2024, stating that they did not assume Nautilus's liabilities in the bankruptcy sale.

4

However, they assumed full control of the business operations and continue to profit from the BowFlex name and consumer goodwill.

25. The Products are defective. They cannot be used safely. The locking mechanism fails to secure the weight plates, resulting in a serious risk of injury during normal use.

26. Defendants' recall does not offer repair, replacement, or full reimbursement to the vast majority of purchasers. Instead, it offers nominal, non-cash compensation that does not come close to making affected consumers whole.

27. Defendants' conduct forces consumers to choose between continuing to use a hazardous product or paying hundreds of dollars out of pocket to replace it. Consumers who do not accept the inadequate recall terms are left with no recourse.

28. Defendants have failed to provide an adequate and equitable remedy for a known safety defect affecting millions of units of the Products currently in consumer homes.

29. Defendants have a duty to provide consumers, like Plaintiff and Class Members, with accurate information about its Products. Defendants marketed, warranted, and represented the Products as a safe and reliable dumbbells, that was suitable for rigors workouts, including rapid movements commonly associated with weightlifting. Indeed, by representing the Products as dumbbells for weightlifting, Defendant represented that the Products would be safe and suitable for usage under normal weightlifting movements. The recall confirms that the Products were not.

30. However, Defendants knew that the Products were defective. Defendants had exclusive knowledge of these the unsafe nature of the Products. Defendants assumed the business operation of Bowflex and has constructive knowledge of Bowflex design, testing, manufacturing, and warranting of the Products. Bowflex, and therefore Defendants, based on its design and testing of the Products, knew that the Products could not withstand the normal rigors of weightlift

5

associated with dumbbell weights. Additionally, both Bowflex and Defendants knew of the defect through consumer complaints and warranty requests. Consumers did not reasonably have access to such information prior to the recall and could not test the Product prior to purchase.

31. Therefore, Defendant's deceptive representations and omissions regarding the unsafe nature of the Products is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

32. By omitting regarding the unsafe nature of the Products, and advertising the Products as dumbbells suitable for weightlifting, on the labels of the Products throughout the Class Period, Defendants knew that those representations and omissions are material to consumers since they would not purchase Products which cause mold growth.

33. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

34. Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

35. Defendant's false, misleading, and deceptive representations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

36. In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for Products marketed without the unsafe defects uncovered here over comparable products not so marketed.

37. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendants injured Plaintiff and the Class Members in that they:

    a. Paid a sum of money for Products that were not what Defendants represented;

    b. Paid a premium price for Products that were not what Defendants represented;

    c. Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendants warranted;

    d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendants represented; and

    e. Were denied the benefit of the properties of the Products Defendants promised.

38. Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

## JURISDICTION AND VENUE

39. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York and Defendants are both is a citizens of Wisconsin; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

40. This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

41.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the state of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

**Plaintiff**

42.     Plaintiff ROBERT AHEARN is a citizen and resident of Wantagh, New York. Plaintiff purchased BowFlex SelectTech 552 Adjustable Dumbbells at Amazon.com. At no time was Plaintiff informed that the dumbbells suffered from a defect that could cause weight plates to detach during use. Instead, Plaintiff purchased the Product because it was represented as an adjustable dumbbell suitable for a number of weightlifting exercises. Plaintiff stopped using the product after learning of the recall in June 2025.

43.     Defendant Johnson Health Tech Trading, Inc. is a corporation organized under the laws of Wisconsin, with its principal place of business located at 1600 Landmark Drive, Cottage Grove, Wisconsin 53527. On information and belief, Defendant is responsible for importing BowFlex SelectTech adjustable dumbbells into the United States for retail sale.

44.     Defendant Johnson Health Tech Retail, Inc. is also a Wisconsin corporation with the same principal place of business. On information and belief, this Defendant distributes, sells, and services BowFlex-branded products, including the recalled adjustable dumbbells, in the United States. According to its own statements, Johnson Health Tech Retail, Inc. acquired certain BowFlex assets in April 2024 as part of a bankruptcy asset purchase from Nautilus, Inc.

45.     Defendants conduct substantial business in New York and throughout the United States. They sell BowFlex products through retailers, e-commerce platforms, and their own website (www.bowflex.com).

## CLASS ALLEGATIONS

46. Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices. Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

47. The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

48. Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

49. The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

50. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

51. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

52. <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a. Whether Defendants were responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b. Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

    c. Whether Defendants made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

    d. Whether Defendants' false and misleading statements and omissions concerning its Products were likely to deceive the public; and

    e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

53. <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

54. <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

55. <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The

Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

56. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

   a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

   b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

   c. When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

   d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

   e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

   f. This class action will assure uniformity of decisions among Class Members;

   g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

    h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

    i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

57. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

58. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

60. The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendants.

61. There is no adequate remedy at law.

62. Defendants misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

63. Defendant's improper consumer-oriented conduct— selling its Products without disclosing the unsafe nature of the Products—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendants' Products and to use the Products when they otherwise would not have. Defendants made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

64. Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

65. Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

66. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

67. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass Members)

68. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

69. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

70. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

71. Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it omits disclosure of the unsafe nature of the Products due to their propensity for fostering mold growth.

72. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

73. Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

14

74. Defendants made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

75. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

76. Defendants made the material omissions described in this Complaint in its advertising and on the Products' packaging and labeling.

77. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

78. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members)**

79. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

80. Plaintiff, on behalf of himself and consumers nationwide, brings a claim for unjust enrichment.

81. Defendants' conduct violated, *inter alia*, state law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

82. Defendants' unlawful conduct as described in this Complaint allowed Defendants to knowingly realize substantial revenues from selling its Product at the expense of, and to the

detriment or impoverishment of, Plaintiff and Class Members and to Defendants' benefit and enrichment. Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

83. Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for the Product, which was not as Defendants represented them to be.

84. Accordingly, it is inequitable for Defendants to retain the benefits conferred by Plaintiff and Class Members' overpayments.

85. Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments so that Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Awarding monetary damages, restitution damages and treble damages;

(c) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated: June 18, 2025

**SULTZER & LIPARI, PLLC**

By:   */s/Philip J. Furia*
_____
Philip J. Furia, Esq.
Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
furiap@thesultzerlawgroup.com
sultzerj@thesultzerlawgroup.com

Russell Busch, Esq.
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (630) 796-0903
rbusch@milberg.com

Nick Suciu, Esq.*
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

Trenton R. Kashima, Esq.*
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
402 West Broadway St., Suite 1760
San Diego, CA 92101
Tel: (619) 810-7047
tkashima@milberg.com

* *Pro hac vice pending*

*Counsel for Plaintiff and the Class*